**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **DMV MINI MART INC.,** | ) |
| **3915 S. Capitol Street S.W.** | ) |
| **Washington, D.C. 20032,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No. ___** |
| | ) |
| **UNITED STATES OF AMERICA** | ) |
| **c/o U.S. Attorney's Office** | ) |
| **601 D Street NW** | ) |
| **Washington, D.C. 20001,** | ) |
| | ) |
| **Defendant.** | ) |

---

**COMPLAINT**

Plaintiff DMV Mini Mart Inc. d/b/a DMV Mini Mart, 3915 South Capitol Street, S.W. Washington, D.C. 20032, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1.      This action seeks judicial review of the Final Agency Decision ("FAD"), dated May 16, 2023, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on DMV Mini Mart's participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

**PARTIES**

2.      Plaintiff DMV Mini Mart, Inc., is a resident and citizen of the District of Columbia.

3.      DMV Mini Mart, Inc., is the owner of the retail food store located at 3915 South Capitol Street, S.W., Washington, D.C. 20032 ("DMV Mini Mart").

4.      DMV Mini Mart is a "Retail Food Store" as such term is defined in 7 C.F.R. § 271.2.

1

5.      Defendant United States of America is the federal government.

6.      USDA is an executive branch department of the federal government.

7.      FNS is an agency of the USDA.

8.      FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9.      Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 42 million Americans and more than 138,000 residents of the District of Columbia. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10.     Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.


**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12.     Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because DMV Mini Mart, the retail food store that is the subject of this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13.     DMV Mini Mart has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14.    DMV Mini Mart is a convenience store that serves an impoverished community in southwest DC.

15.    At all times relevant hereto, DMV Mini Mart is and has been authorized by FNS to participate in SNAP as an authorized retailer.

16.    At all times relevant hereto, DMV Mini Mart has trained its employees regarding SNAP in accordance with FNS requirements.

17.    At all times relevant hereto, DMV Mini Mart properly supervised its employees, including regarding SNAP transactions and program requirements.

18.    DMV Mini Mart sells SNAP-eligible staple food items.

19.    A majority of items sold at DMV Mini Mart are SNAP-eligible items.  DMV Mini Mart also sells non-food items that are not SNAP-eligible items, including body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer.

20.    The Food and Nutrition Act does not define "common nonfood items."

21.    FNS's SNAP regulations do not define "common nonfood items."

22.    FNS has not issued any publicly issued guidance defining "common nonfood items."

23.    Body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not "common nonfood items" under FNS's regulations or otherwise.

24.    No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

25.    At all times relevant hereto, DMV Mini Mart is and has been authorized by FNS to redeem SNAP benefits. DMV Mini Mart's FNS-issued SNAP authorization number is 0820920.

26.    On or about February 9, 2023, FNS's Retailer Operations Division ("ROD") sent DMV Mini Mart a letter charging the Store with accepting SNAP benefits in exchange for common non-

food items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

27.     The Charge Letter alleged that DMV Mini Mart sold body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer in exchange for SNAP benefits ("EBT") on three occasions during January 2023 to an undercover FNS investigator.

28.     On February 19, 2023, DMV submitted its response to the Charge Letter.

29.     On March 1, 2023, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations took place, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participation in SNAP for six months.

30.     The Initial Determination, which consisted of a two-page form letter, advised that FNS found that "the violations cited in our charge letter occurred at your firm." The Initial Determination also "determined that you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

31.     On March 7, 2023, DMV Mini Mart timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

32.     On March 22, 2023, DMV Mini Mart submitted its response in support of its Request for Administrative Review of the Initial Determination ("DMV Mini Mart's Response").

33.     DMV Mini Mart's Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP. DMV Mini Mart's Response was supported by a declaration from Marjahan Akter, DMV Mini Mart's vice-president.

34.     On May 16, 2023, FNS Administrative Review Officer ("ARO") Lorie Conneen issued the FAD.  A copy of the FAD is attached hereto as Exhibit A.

35.    In its FAD, FNS rejected all of DMV Mini Mart's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon DMV Mini Mart.

36.    The FAD failed to address DMV Mini Mart's argument that body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not "common nonfood items."

37.    The FAD rejected DMV Mini Mart's argument that the management of the Store was not careless and did not poorly supervise its employees, concluding without any factual basis that "[t]he more likely explanation is that store ownership and/or management failed to properly train and subsequent supervise the employees."

38.    The FAD failed to address DMV Mini Mart's argument that a warning was appropriate.

39.    The FAD rejected DMV Mini Mart's argument that a CMP was appropriate, noting only that "Agency mapping systems document that there are 11 SNAP authorized stores of comparable or larger size located within a 1.0 mile radius of the Appellant firm . . ."  The FAD contained no discussion or analysis of whether any of those 11 other SNAP-authorized stores carried as large a variety of staple food items at comparable prices."

## FNS's SNAP REGULATIONS

40.    Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "*common nonfood items due to carelessness or poor supervision*" (emphasis added) is a six-month term disqualification from participation in SNAP.

41.    FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

42.    Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause

hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

43.     Plaintiff DMV Mini Mart repeats and re-alleges paragraphs 1 through 42 as if fully set forth herein.

44.     DMV Mini Mart denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

45.     DMV Mini Mart did not sell any "common nonfood items" in exchange for SNAP benefits.

46.     At no time did DMV Mini Mart poorly supervise its employees.

47.     No evidence in the Administrative Record exists that supports FNS's determination that DMV Mini Mart poorly supervised its employees.

48.     At no time did DMV Mini Mart act carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

49.     No evidence in the Administrative Record exists that supports FNS's determination that DMV Mini Mart acted carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

50.     FNS's determination that DMV Mini Mart sold "common nonfood items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

51.     FNS's determination that DMV Mini Mart poorly supervised its employees was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

52.     FNS's determination that DMV Mini Mart acted carelessly in permitting "common nonfood items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

53.     FNS's six-month disqualification of DMV Mini Mart from participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States¸*903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

54.     FNS's six-month disqualification of DMV Mini Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

55.     FNS failed to consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

56.     FNS's six-month disqualification of DMV Mini Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

57.     FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at DMV Mini Mart resided.

58.     FNS officials and employees did not visit other SNAP-authorized stores in the vicinity during January 2023.

59.     FNS did not conduct a comparison of prices of staple food items at DMV Mini Mart and other SNAP-authorized stores in the vicinity during January 2023.

7

60.     FNS's six-month disqualification of DMV Mini Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at DMV Mini Mart resided; (2) was not based on any store visits to other SNAP-authorized retailers in the vicinity during January 2023; and (3) was not based on a comparison of prices of staple food items at DMV Mini Mart and other SNAP-authorized stores in the vicinity during January 2023.

61.     FNS's six-month term disqualification of DMV Mini Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store during January 2023.

62.     FNS's six-month term disqualification of DMV Mini Mart from participating in SNAP was improper because it was not based on evidence that DMV Mini Mart poorly supervised its employees.

63.     FNS's six-month term disqualification of DMV Mini Mart from participating in SNAP was improper because FNS had no evidence that DMV Mini Mart acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

64.     FNS's denial of DMV Mini Mart's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

65.     FNS's denial of DMV Mini Mart's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

66.     FNS's failure to issue a warning to DMV Mini Mart based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

67.     FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

68.     FNS's denial of DMV Mini Mart's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

69.     FNS's denial of DMV Mini Mart's request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

70.     At no time did FNS provide DMV Mini Mart with a warning that non-food items, including (but not limited to) body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not eligible for the redemption of SNAP benefits prior to issuance of the Charge Letter.

71.     FNS should have provided DMV Mini Mart with a warning that non-food items, including (but not limited to) body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

72.     FNS should have provided DMV Mini Mart with a warning that non-food items, including (but not limited to) body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not eligible for the redemption of SNAP benefits after the first alleged violation.

73.     In the event that FNS provided DMV Mini Mart with a warning that non-food items, including (but not limited to) body wash, dryer sheets, bleach powder cleaner, multi-purpose

cleaner, and carpet and room deodorizer are not eligible for the redemption of SNAP benefits after the first alleged violation, no further violations would have occurred.

74.     In the event that FNS provided DMV Mini Mart with a warning that non-food items, including (but not limited to) body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are not eligible for the redemption of SNAP benefits after the first alleged violation, DMV Mini Mart would have re-trained its employees regarding SNAP requirements.

75.     FNS had no basis to have concluded that body wash, dryer sheets, bleach powder cleaner, multi-purpose cleaner, and carpet and room deodorizer are "common nonfood items."

76.     A SNAP retailer charged with the exchange of common nonfood items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

77.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at DMV Mini Mart or any other SNAP-authorized retailer in the vicinity.

78.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at DMV Mini Mart or any other SNAP-authorized retailer in the vicinity.

79.     No other SNAP-authorized retailer in the vicinity sells as wide an array of SNAP-eligible items at comparable prices as at DMV Mini Mart.

80.     FNS's decision to deny DMV Mini Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

81.     FNS's decision to deny DMV Mini Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

82.     FNS's decision to deny DMV Mini Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

83.     Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

84.     Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

85.     7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling **as large a variety of staple food items at comparable prices**." (emphasis added).

86.     FNS, in issuing the FAD, relied upon records and other information never provided to DMV Mini Mart.

87.     In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

88.     FNS uses a one-mile radius for determining whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

89.    FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

90.    FNS's one-mile radius for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes is arbitrary and capricious.

91.    FNS's one-mile radius for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes ignores that most SNAP beneficiaries do not have cars and do not (and cannot) walk up to two miles (round trip) to shop at a SNAP-authorized retailer.

92.    No factual support exists for FNS's decision to deny DMV Mini Mart's request for a Hardship CMP.

93.    FNS relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to DMV Mini Mart.

94.    The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to DMV Mini Mart.

95.    The FAD is FNS's final administrative determination that its six-month disqualification of DMV Mini Mart from participation as an authorized SNAP retailer was properly imposed.

96.    The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

97.    Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

98.    The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

99.    FNS incorrectly determined that DMV Mini Mart was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

100.    FNS's denial of DMV Mini Mart's request for a Hardship CMP was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

101.    In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to DMV Mini Mart.

102.    Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of DMV Mini Mart from SNAP and determined that the alleged violations took place.

103.    Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

104.    Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.


WHEREFORE, Plaintiff DMV Mini Mart respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)  Reversing the FAD;

(b)  Vacating FNS's Initial Determination;

(c)  Preliminarily enjoining FNS from disqualifying DMV Mini Mart from participating in SNAP during the pendency of this action;

(d)  Permanently enjoining FNS from denying DMV Mini Mart authorization to participate in SNAP based upon the Initial Determination and the FAD;

(e)  In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(f)  Awarding DMV Mini Mart an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(g)  Such other and further relief as the Court may deem just and proper.


Respectfully submitted this 26th day of May 2023.


By:      /s/ Stewart D. Fried
         Stewart D. Fried, Esq.
         D.C Bar No. 457801
         Olsson Frank Weeda Terman Matz PC
         2000 Pennsylvania Avenue, N.W.
         Suite 4003
         Washington, D.C. 20006
         (202) 518-6326 – Direct Dial
         (202) 234-3550 – Facsimile
         sfried@ofwlaw.com

*Attorneys for Plaintiff DMV Mini Mart Inc.*